**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.M.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.G., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 813 WDA 2021 |

Appeal from the Decree Entered March 29, 2021
In the Court of Common Pleas of Crawford County
Orphans' Court at OC-2020-22

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED:  December 2, 2021**

R.G. (Father) appeals from the decree involuntarily terminating his parental rights to his daughter, R.M.H. (Child), born in February 2017.[1]  Upon careful review, we affirm.

Father and Mother were married in June 2016.  Orphans' Court Opinion, 6/30/21, at 4.  At the time of Child's birth, they were separated.  N.T., 3/22/21, at 12.  Father and Mother divorced in May 2017, when Child was approximately three months old.  *Id.* at 13.  Father never sought custody of

---

[1] The record indicates N.L.-H. (Mother) executed a consent to adoption on January 22, 2021.  Crawford County Children and Youth Services (CYS) filed a petition to confirm consent to the adoption of Child on March 18, 2021.  The court scheduled a hearing for June 30, 2021.  On June 28, 2021, CYS filed a motion to reschedule, in which it requested that the hearing be continued pending the outcome of Father's appeal from the termination decree.  The court granted the motion and directed that the hearing be continued and rescheduled upon motion by any party.

Child or provided support. Orphans' Court Opinion, 6/30/21, at 5. In addition,
he was incarcerated intermittently during the first two years of Child's life.

On June 27, 2017, Father filed a petition challenging the presumption of
paternity based on marriage. Mother filed a similar petition on February 6,
2018. The court granted the petitions by order dated March 2, 2018, and
ordered DNA testing. N.T., 2/24/21, at 26. On March 16, 2018, the test
results revealed that Father is Child's biological father. *Id.*

The court found:

> Father was incarcerated from April 16 to May 23, 2017, shortly
> after [C]hild was born, and again from December 21, 2017 to
> February 13, 2018. *See* Ex. V, *Commonwealth v. [G]* CR [ ]-2016
> et al. (Order, 2/14/18, Stevens, J.). He was also imprisoned in
> 2018 from July 3 to July 31, and apparently at other times on New
> York charges. *See* Ex. T, *Commonwealth v. [G]*, CR [ ]-2018
> (Sentence Order, 6/6/19); N.T., 3/22/21, at 37 ("I got picked up
> in New York, which had nothing to do with Pennsylvania
> whatsoever"). In 2019, he was incarcerated from January 8 to
> 10, January 13 to 20 (in Venango County), and January 25 to 26.
> N.T., 2/24/21, at 31-32; N.T., 3/22/21, at 56-58.

Orphans' Court Opinion, 6/30/21, at 5 (footnote omitted). Further, in
December 2018, Father was indicated as a perpetrator of sexual abuse against
his niece. N.T., 2/24/21, 32-33.

On January 23, 2019, as a consequence of Mother's homelessness, the
court placed Child and her two half-siblings in kinship care with her maternal
grandparents. Orphans' Court Opinion, 6/30/21, at 4; N.T., 2/24/21, at 30.
On April 18, 2019, the court adjudicated Child dependent.

On March 13, 2019, multiple criminal charges were filed against Father related to the sexual abuse of his niece, which occurred between 2015 and July 13, 2018; Father ultimately pled guilty to two counts of corruption of minors. N.T., 2/24/21, at 33; Orphans' Court Opinion, 6/30/21, at 7, n. 14. In addition, Father pled guilty to one count of corruption of minors at a separate criminal docket relating to another minor "between February 1 and March 9, 2018." Orphans' Court Opinion, 6/30/21, at 7, n. 14. The orphans' court explained:

> Father received an aggregate sentence of 20 to 84 months commencing June 6, 2019, less 32 days of pre-sentence incarceration credit, and thus his maximum date computes to about May 5, 2026. *See* Exs. S, T. His minimum date was January 5, 2021, and he claims to have (only) "a legitimate chance" is late of being paroled following the hearing to be held in August [2021]. *See* Ex. B (review of 10/8/20); N.T., 3/22/21, at 22, 28, 57 ("he has said that many times during the permanency review hearings that there's a certain date he's going to be released and it hasn't happened").

*Id.* at 7, n. 13.

Father has remained incarcerated since March 20, 2019. N.T., 3/22/21, at 57. He was first incarcerated at Crawford County Correctional Facility. Father was moved to SCI–Camp Hill in October 2020, and to SCI–Albion in November 2020. *Id.* at 59. The court explained that Father was "confined at various times in a county Restrictive Housing Unit (RHU) for misconducts occurring on July 18, 2019, December 24, 2019, January 5, 2020, and May 4, 2020." Orphans' Court Opinion, 6/30/21, at 5. Further, "he was also cited for misconducts on at least January 5 and April 15, 2020, but claimed that

those did not result in confinement in restrictive housing. He reported being 'in the hole for probably eight months' prior to October of 2020." Orphans' Court Opinion, 6/30/21, at 5, n. 9 (citations to notes of testimony omitted).

Father has had eight in-person visits with Child in prison. N.T., 3/22/21, at 48-49. His last visit occurred on March 10, 2020. *Id.* at 59. Father was confined in the RHU: July 18, 2019 – November 13, 2019, and December 24, 2019 – February 24, 2020. *Id.* at 49. Thus, no prison visits occurred during those time periods. Father has not had visits with Child since being moved to SCI–Albion because he has not placed the CYS caseworker on the approved visitor list. *Id.* at 51.

Father has not complied with parenting objectives due to his incarceration. N.T., 2/24/21, at 39. In furtherance of Child's permanency goal of reunification, the court ordered that Father: obtain a mental health assessment and follow all recommendations, obtain stable housing, participate in a Community Abuse Response Team (CART) assessment, and follow all recommendations. N.T., 2/24/21, at 39. The orphans' court explained, "CART assessment was ordered because Father was indicated for sexual abuse due to allegations of rape, etc., at No. CR [ ]-2019. N.T., 2/24/21, at 59; N.T., 3/23/21, at 14; *see* Exs. S, T (criminal Information)." Orphans' Court Opinion, 6/30/21, at 7, n. 12.

On October 7, 2020, CYS petitioned for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8),

and (b). The hearing occurred on February 24, 2021 and March 22, 2021. Mary Adelman, Esquire, served as Child's guardian *ad litem* (GAL) and legal counsel. CYS presented the testimony of its caseworker, Jaclyn Fike; Child's maternal grandmother, M.H.; and Mother (by telephone). In addition, CYS introduced into evidence Child's dependency record and Father's criminal dockets. Father testified by videoconference from SCI–Albion.

On March 23, 2021, the orphans' court stated on the record its findings of fact and conclusion that CYS met its burden of proof pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). By decree dated that same day and docketed March 29, 2021, the court terminated Father's parental rights. Father appealed on April 28, 2021.

Preliminary, we address whether this appeal should be quashed as untimely. Pursuant to Pa.R.A.P. 903(a), a notice of appeal must be filed within 30 days of the entry of the order being appealed. An order pursuant to orphans' court jurisdiction is entered, for purposes of Rule 903(a), once a court official complies with Pa.O.C.R. 4.6, requiring court officials to immediately give written notice of an order terminating parental rights to the parties, with notation on the docket that such notice has been provided. **See** Pa.O.C.R. 4.6, Note (Rule 4.6 "is derived from Pa.R.C.P. No. 236."); **see also Carr v. Michuck**, 234 A.3d 797, 805 (Pa. Super. 2020) ("Our Supreme Court, in **Frazier v. City of Philadelphia**, 557 Pa. 618, 735 A.2d 113 (Pa. 1999), held (in the context of a notice of appeal) that "an order

is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." **Frazier**, 735 A.2d at 115 (citation omitted). The parties' receipts of notice of the order do not alter the formal date of the order's entry on the docket and the associated commencement of the period allowed for appeal for purposes of the rules. **Id.**").

In this case, there is no date of entry on the docket with the required notation that appropriate notice was given. Therefore, the appeal period has not commenced, and Father's notice of appeal is not untimely. Because this is a children's fast track case, however, Father was required to contemporaneously file a concise statement of errors complained of on appeal pursuant to Rule 1925(a)(2)(i) and (b), but failed to do so. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding "the failure of an appellant in a children's fast track case to file contemporaneously a concise statement with the notice of appeal pursuant to rules 905(a)(2) and 1925(a)(2), will result in a defective notice of appeal. The disposition of the defective notice of appeal will then be decided on a case by case basis under the guidelines set forth in **Stout** [**v. Universal Underwriters Ins. Co.,** 421 A.2d 1047, 1049 (Pa. 1980).]"). By order dated May 5, 2021, the orphans' court directed Father, pursuant to Rule 1925(b), to file a concise statement within 21 days. **See J.P. v. S.P.**, 991 A.2d 904, 908 (Pa. Super. 2010) (some citations omitted) ("an appellant's failure to comply with an order to file a Rule 1925(b) statement in a timely manner constitutes waiver of all objections to

the order, ruling, or other matter complained of on appeal. This waiver rule applies to family law cases. **In re L.M.,** 923 A.2d 505, 509 (Pa. Super. 2007).").

Father filed a concise statement, untimely, on June 17, 2021. However, like the termination decree, the orphans' court docket does not contain a date of entry for the Rule 1925(b) order. As the appeal period was not triggered, we decline to find waiver and quash the appeal. **See Forest Highlands Community Ass'n v. Hammer**, 879 A.2d 223, 227 (Pa. Super. 2005) (issues not raised in a court-ordered Rule 1925(b) statement are waived, but if any one of the procedural steps set forth in Pa.R.C.P. 236 is missing, the appellant's failure to comply with Rule 1925(b) will not result in waiver); **see also J.P. v. S.P.**, 991 A.2d at 908 (citation omitted) (reiterating "Rule 1925(b) implicates the notice procedure set forth in Pa.R.C.P. 236(b) … If any one of these procedural steps is missing, the appellant's failure to comply with Rule 1925(b) will not result in waiver of the issues raised."). Accordingly, we review the merits of Father's issues.

Father presents two questions for review, which we have re-ordered for disposition as follows:

> 1. Whether the court made an error of law by finding [Father] did not utilize all resources available [to] him while in prison to secure reunification[?]
>
> 2. Whether the court committed an error of law by finding [CYS] had in fact made all reasonable efforts to promote unification [*sic*][?]

Father's Brief at 4.[2]

The involuntary termination of parental rights is controlled by Pennsylvania's Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d at 276. We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Instantly, in his statement of questions involved, Father's challenge pertains only to Section 2511(a)(1). Father's Brief at 4 (whether Father "did

---

[2] Child's GAL/legal counsel advocates for affirmance of the decree terminating Father's parental rights. *See* Appellee's Brief at 1-8.

not utilize all resources available [to] him while in prison to secure reunification," *i.e.*, whether he has evidenced a settled purpose of relinquishing parental claim … or has refused or failed to perform parental duties.). Likewise, in his concise statement, Father's averments relate only to Section 2511(a)(1). Concise Statement of Errors Complained of on Appeal, 6/17/21, at 2, ¶ e (asserting Father "attempted to utilize all given resources and to take an affirmative approach to fulfill his parental duties."). Accordingly, Father has waived any claims concerning subsections (2), (5), and (8) of Section 2511(a). **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) ("it is well-settled that issues not included in in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived.") (citing **Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006)).

Furthermore, Father does not raise any issue in his statement of questions or concise statement with respect to Section 2511(b). **See** Father's Brief at 4; Concise Statement of Errors Complained of on Appeal, 6/17/21, at 1-2. Father has thus waived any claim regarding Child's needs and welfare under Section 2511(b). **In re M.Z.T.M.W.**, **supra**.

Waiver notwithstanding, the evidence supports the orphans' court's decision to terminate Father's parental rights pursuant to Section 2511(a)(2) and (b). We review a termination decree for an abuse of discretion. **See In**

*re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).  This Court has explained:

> [W]e must accept the findings of fact and credibility determinations of the orphans' court if the record supports them.  *T.S.M.*, 71 A.3d at 267.  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion."  *Id.* (citation omitted).  "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand."  *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).  We may not reverse merely because the record could support a different result.  *T.S.M.*, 71 A.3d at 267.  We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings."  *Id.*  Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence."  *M.G.*, 855 A.2d [68,] 73-74 [(Pa. Super. 2004)] (citation omitted).

*In re K.M.G.*, 219 A.3d 662, 672 (Pa. Super. 2019) (*en banc*).

> Section 2511(a)(2) and (b) state:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> . . .

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> . . .

> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding a parent's repeated and continued incapacity, abuse, neglect or refusal; whether such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and whether the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). We have stated that "grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), the Pennsylvania Supreme Court addressed a parent's incarceration in the context of termination under Section 2511(a)(2). The Court held "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and

continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id.* at 828.

With respect to Section 2511(b), we have explained, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted). "[T]he trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)).

Here, the evidence supports termination of Father's parental rights pursuant to Section 2511(a)(2). Father denied paternity of Child until March 2018, when Child was 13 months old and DNA testing indicated he was Child's father. He was incarcerated intermittently in 2018, and there is no evidence

he provided any care, control, or subsistence to Child when he was not incarcerated. More recently, and since March 20, 2019, Father has been incarcerated continuously with repeated infractions. At the time of the hearing, Father's maximum sentence "computes to about May 5, 2026," when Child will be nine years old. Orphans' Court Opinion, 6/30/21, at 7, n. 13. The CYS caseworker, Ms. Fike, testified that once he is released from prison, to progress toward reunification,

> [Father] would need to complete a CART assessment and get those recommendations and then follow any recommendations that came off of that assessment before it could even be [considered] . . . whether or not he could have unsupervised visits with his daughter. He would also need to have a mental health assessment. He would need to obtain and maintain housing and then obtain and maintain employment. . . .

N.T., 2/24/21, at 39-40.

Based on the foregoing, Father's "repeated and continued refusal" initially caused Child to be without essential parental care, control, or subsistence. Then, due primarily to his incarceration, Father's repeated and continued refusal became repeated and continued incapacity, "which has caused Child to be without essential parental care[.]" 23 Pa.C.S.A. § 2511(a)(2).

As to Section 2511(b), we would also find no abuse of discretion as there is no evidence of any bond between Father and Child, who has had little contact with Father. Child's most recent visit with Father occurred on March 10, 2020, when Child was three years old. Child's maternal grandmother,

- 13 -

M.H., testified that Child does not know Father as her biological father or ask about him. N.T., 3/22/21, at 47.

Child was placed in kinship care with her maternal grandparents on January 23, 2019, where she has remained, with the exception of April - May 2020.[3] Both Ms. Fike and M.H. testified that Child calls her grandparents "momma and papa," and the grandparents want to adopt Child. N.T., 2/24/21, at 44, 46, 69. The evidence amply supports the court's conclusion that terminating Father's parental rights will serve Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Lastly, we address Father's second issue, in which he argues the orphans' court committed an error of law in finding CYS made reasonable efforts to promote reunification with Child. The orphans' court stated that "it did not make" this finding. Orphans' Court Opinion, 6/30/21, at 3. The court added that "even if such a finding had been made, and was in error, this would not invalidate the termination of Father's parental rights." *Id.* (citing N.T., 3/23/21; *In re D.C.D.*, 629 Pa. 325, 346, 105 A.3d 662, 675 (2014)[.]" *Id.* We agree.

> As the orphans' court noted, the Pennsylvania Supreme Court,
>
> held that this Court erred in reversing the trial court's termination of the father's parental rights pursuant to Section 2511(a)(2) and (b) as a result of the agency's failure to provide

---

[3] Child and her half-siblings were returned to Mother's care in April - May 2020 "for a trial home visit that failed." Orphans' Court Opinion, 6/30/21, at 4; N.T., 2/24/21, at 30-31.

reasonable efforts to enable the father to reunify with his child. The Court held that there is no Pennsylvania or federal provision "that requires delaying permanency for a child due to the failure of an agency to provide reasonable services, when the court has otherwise held that grounds for termination have been established and the court has determined that termination is in the best interests of the child by clear and convincing evidence." **D.C.D.**, 105 A.3d at 676. The **D.C.D.** Court concluded:

> Applying this standard to the case at bar, the trial court did not abuse its discretion in holding that [the agency] established grounds for termination of [the f]ather's parental rights by clear and convincing evidence based on [the f]ather's continued incapacity to care for child. Moreover, the trial court recognized for purposes of subsection 2511(b) that a parent's continued incarceration may factor into a determination of the child's best interests. In this case, the court did not abuse its discretion in determining that [the c]hild's best interests will be served by terminating [the f]ather's parental rights given the absence of a bond with [the f]ather, [the f]ather's expected incarceration until [the c]hild is at least seven and likely longer, and her strong bond with her foster family with whom she has lived nearly all her life and who has indicated a desire to adopt her.

> **Id. at 677** (citation omitted).

**In re T.J.J.M.**, 190 A.3d 618, 630-631 (Pa. Super. 2018).

Similarly, in this case, we would conclude that clear and convincing evidence supports termination of Father's parental rights whether reasonable efforts existed or not. **D.C.D.**, **supra**. Accordingly, no relief is due.

Decree affirmed.

Judgment Entered.

- 15 -

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/2/2021